**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 11-1722**

_____

BUILDERS MUTUAL INSURANCE COMPANY,

             Plaintiff - Appellee,

      v.

DRAGAS MANAGEMENT CORPORATION,

             Defendant - Appellant,

      and

DRAGAS ASSOCIATES X, LC; HAMPSHIRES ASSOCIATES, LC,

             Counter-Plaintiffs - Appellants,

FIREMEN'S INSURANCE COMPANY OF WASHINGTON, D.C.,

             Defendant - Appellee,

      v.

THE HANOVER INSURANCE COMPANY; CITIZENS INSURANCE COMPANY OF
AMERICA,

             Third Party Defendants - Appellees.

_____

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  Rebecca Beach Smith, District
Judge.  (2:09-cv-00185-RBS-TEM)

_____

Argued:  October 23, 2012          Decided:  November 20, 2012

_____

Before MOTZ, DUNCAN, and FLOYD, Circuit Judges.

---

Vacated and remanded by unpublished per curiam opinion.

---

**ARGUED:** R. Johan Conrod, Jr., KAUFMAN & CANOLES, PC, Norfolk, Virginia, for Appellants. Danny Mark Howell, SANDS ANDERSON, PC, McLean, Virginia, for Appellees. **ON BRIEF:** William E. Spivey, KAUFMAN & CANOLES, PC, Norfolk, Virginia, for Appellants. Mikhael D. Charnoff, Courtney South Schorr, SANDS ANDERSON, PC, McLean, Virginia, for Appellee Builders Mutual Insurance Company; John B. Mumford, Jr., Kathryn E. Kransdorf, HANCOCK, DANIEL, JOHNSON & NAGLE, PC, Glen Allen, Virginia, for Appellee Firemen's Insurance Company of Washington, D.C.; John Malloy, ROBINSON & COLE, LLP, Hartford, Connecticut, for Appellees Hanover Insurance Company and Citizens Insurance Company of America.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case presents a dispute over several insurers' duties to indemnify a general contractor for its remediation of defective drywall in homes it had constructed. The district court granted summary judgment to the insurers. For the reasons that follow, we must vacate the judgment of the district court and remand to that court so that it can dismiss the case for lack of subject matter jurisdiction.

I.

Between 2005 and 2009, Dragas Management Corporation ("DMC") served as general contractor for two developments in southeastern Virginia. DMC subcontracted the drywall procurement and installation for both developments. Due to a shortage of domestic drywall, the subcontractor purchased some of its drywall from a Chinese facility. The Chinese drywall was defective, and contained concentrations of elemental sulfur 375 times greater than that in representative domestic-manufactured drywall. The subcontractor installed the Chinese drywall in seventy-four homes within the two developments.

Over this period of time, DMC held a number of different insurance policies from two insurers. DMC purchased a commercial package policy for February 6, 2006 to February 6, 2007 from Builder's Mutual Insurance Company, a commercial

3

package policy and commercial umbrella policy for February 5, 2007 to February 5, 2008 from Firemen's Insurance Company, and a commercial package policy and commercial umbrella policy for March 1, 2008 to March 1, 2009, again from Builders. Each policy contained commercial general liability coverage for "those sums that [DMC] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the] insurance applies."

The Chinese drywall's sulfuric off-gassing damaged metal fixtures, wiring, and connections within the homes containing the drywall. DMC investigated complaints about the damage and discovered the presence of the Chinese drywall. Beginning in February 2009, DMC prepared a remediation plan and began executing remediation agreements with individual homeowners. Pursuant to the agreements, DMC agreed to remove and replace the Chinese drywall, replace all damaged metal components, pay relocation expenses, and compensate the homeowners for damages to personal property. Neither Builders nor Firemen's were party to DMC's remediation agreements with the homeowners.

When DMC sought indemnification for its remediation costs, both Builders and Firemen's denied coverage. On April 23, 2009, Builders filed this action against DMC, in which it alleged federal jurisdiction on the basis of diversity of citizenship and sought a declaratory judgment that it owed no duty to

4

indemnify DMC for its Chinese drywall remediation costs. Builders also named Firemen's as a defendant on the theory that, if the court found that Builders owed DMC a duty to indemnify, the court could allocate the costs equitably between the insurers. On May 21, Firemen's answered and filed a cross-claim against DMC. On June 22, DMC answered Builders' complaint and Firemen's crossclaim, and filed a counterclaim against Builders and a crossclaim against Firemen's. On July 7, DMC filed a third-party complaint against its subcontractors' insurers -- Hanover Insurance Company and Citizens Insurance Company of America. Nine months later, on April 7, 2010, Dragas Associates X, LC and Hampshire Associates, LC -- the developers of the neighborhoods affected by the defective drywall -- joined the case as counterclaim plaintiffs.

After more than two years of litigation, the district court granted summary judgment to the insurers. The district court held that the policies' commercial general liability provisions did not cover DMC's remediation costs because DMC made the remediation voluntarily, rather than under a legal obligation to pay. DMC, Dragas Associates, and Hampshires Associates (collectively, "Dragas") noted an appeal. While the case was on appeal, Dragas moved to dismiss the case for lack of subject matter jurisdiction. We delayed ruling on that motion to allow oral argument on both the jurisdictional motion and the merits.

5

We consider subject matter jurisdiction de novo, regardless of whether a party has raised, or the district court addressed, the issue. See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005). In its motion to dismiss, Dragas argues that we lack diversity jurisdiction over this case. Dragas' argument proceeds in two parts. First, Dragas contends that we must realign Firemen's as a plaintiff in the case, and that such realignment destroys complete diversity because Firemen's (a realigned plaintiff) and DMC (a defendant) are both citizens of Virginia. Second, Dragas contends that Firemen's is a required and indispensable party to the case, and thus we cannot dismiss Firemen's to save diversity jurisdiction. We take up each argument in turn.

A.

"Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941). Instead, courts must "look beyond the pleadings, and arrange the parties according to their sides in the dispute." Id. (internal quotation marks omitted). To determine when to realign parties, we apply the two-step "principal purpose" test. U.S. Fid. & Guar. Co. v. A & S Mfg. Co. (Fidelity), 48 F.3d 131, 133 (4th Cir. 1995). First, we

determine the primary issue in the controversy by considering the "plaintiff's principal purpose for filing its suit." Palisades Collections LLC v. Shorts, 552 F.3d 327, 337 (4th Cir. 2008) (internal quotation marks omitted). Second, "we align the parties according to their positions with respect to the primary issue." Id. If the alignment differs from that in plaintiff's complaint, we look to whether diversity jurisdiction still exists.

In Fidelity, an insurer filed a declaratory judgment action against its insured and several co-insurers alleging, first, that it owed no duty to indemnify the insured for certain environmental liabilities, and, second, that if it must indemnify, the co-insurers owed a duty of contribution. 48 F.3d at 132. The district court applied the principal purpose test and realigned all of the insurers as plaintiffs and the insured as the sole defendant. The realignment destroyed complete diversity, and the district court dismissed the action for lack of jurisdiction. Id. at 132. We affirmed. In so doing, we agreed with the district court that "any disputes existing among the insurers regarding contribution are ancillary to the primary issue of the duty to indemnify." Id. at 134. Because all of the insurers shared the principal purpose of avoiding liability to the insured, realignment of the parties was required. Id.

7

We find the case at hand indistinguishable from <u>Fidelity</u>. Builders' principal purpose in filing its action was to avoid a duty to indemnify DMC for its Chinese drywall remediation costs. Builders and Firemen's share this principal purpose of altogether avoiding liability to DMC; any disputes between the insurers are merely "ancillary to the primary issue of the duty to indemnify" and "hypothetical" until the insurers' liabilities are determined. <u>Fidelity</u>, 48 F.3d at 134. Therefore, we must realign Firemen's as a plaintiff.

B.

Our realignment of Firemen's as a plaintiff destroys complete diversity, for both Firemen's and defendant DMC are citizens of Virginia. Nonetheless, the insurers -- including Firemen's -- argue that we can save our jurisdiction by dismissing Firemen's from the case. Dragas counters that Firemen's is a required and indispensable party under Fed. R. Civ. P. 19, and thus cannot be dismissed.

We may dismiss a dispensable non-diverse party to preserve our jurisdiction. <u>Eriline Co. S.A. v. Johnson</u>, 440 F.3d 648, 652 (4th Cir. 2006). However, the Supreme Court has "emphasize[d] that such authority should be exercised sparingly," with due consideration of "whether the dismissal of [the] nondiverse party will prejudice any of the parties in the litigation." <u>Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 U.S.

8

826, 837 (1989). Moreover, in order to dismiss a non-diverse party from a case, we must be satisfied that it is not an indispensable party under Rule 19. Eriline Co., 440 F.3d at 652.

Dragas relies on Schlumberger Industries, Inc. v. National Surety Corp., 36 F.3d 1274 (4th Cir. 1994), to argue that Firemen's is an indispensable party. In Schlumberger, we held that when multiple insurers issue policies covering the same conduct, but for different time periods, and those policies are potentially implicated by an insured's environmental remediation efforts, all of the insurers are required and indispensable parties to a suit regarding any individual insurer's coverage. Id. at 1286. We emphasized that allowing cases to proceed with fewer than all of the insurers subjected the insured to the practical possibility of whipsaw where the insured could "wind up with less than full coverage even though it was legally entitled to full coverage." Id. In particular, we identified three questions that -- if presented to different courts -- might result in a whipsaw of prejudicially inconsistent adjudication: (1) the legal question of whether the policies provide coverage at all; (2) the legal question of what constitutes a "trigger" for the coverage to attach; and (3) the factual question of when -- if at all -- such a trigger occurred. The risks of both legal and factual whipsaw strongly

9

influenced our determination that all of the insurers were both required and indispensable to any adjudication as to an individual insurer's coverage. Id. at 1287-88.

Schlumberger controls in this case. Firemen's and Builders both issued policies with commercial general liability provisions covering the same conduct by DMC, but for different time periods, and both insurers' policies are potentially implicated by DMC's remediation efforts. As in Schlumberger, separate litigation as to Builders and Firemen's duties to indemnify DMC would pose threats of both legal and factual whipsaw.

All of Hanover and Firemen's attempts to distinguish Schlumberger fail. First, they argue that because the district court granted summary judgment, this case presents a purely legal question and negates the risk of factual whipsaw so emphasized in Schlumberger. However, in doing so they ignore the fact that Schlumberger also involved an appeal from a grant of summary judgment for the insurers. The district court's dispositive legal conclusions did not palliate our concerns of potential factual whipsaw in Schlumberger, and they do not here.[*]

---

[*] A week after oral argument in this case, the Supreme Court of Virginia decided Travco Insurance Co. v. Ward (No. 120347) (Va. Nov. 1, 2012). In a post-argument filing, Builders argues that the Travco decision disposes of the merits claim in this case. Be that as it may, the existence of a dispositive state
(Continued)

10

The insurers also argue that we should consider issues of finality and judicial economy before dismissing a case filed over three years ago that has gone to final judgment. Once again, they ignore Schlumberger's procedural posture. In Schlumberger the case had also gone to final judgment, and we nonetheless dismissed it for lack of jurisdiction over six years after its original filing. Finally, and relatedly, the insurers present several arguments regarding Dragas' failure to raise Firemen's realignment and indispensability earlier; however, such thinly veiled waiver arguments are ineffectual. For a party may question subject matter jurisdiction at any stage of litigation, even for the first time on appeal. Constantine, 411 F.3d at 480.

Therefore, we apply Schlumberger and hold that Firemen's is a required and indispensable party to this case; accordingly, we cannot dismiss Firemen's from the case to preserve our jurisdiction.

---

decision regarding the merits does not affect our jurisdictional analysis. Moreover, if Travco is as dispositive as Builders suggests, Builders' burden in relitigating this case -- if refiled in state court at all -- will be trivial indeed.

11

III.

For the reasons set forth above, we vacate the judgment of the district court and remand to that court so that it can dismiss the case for lack of subject matter jurisdiction.

<u>VACATED AND REMANDED</u>